# EXHIBIT 1

| | |
|---|---|
| TENNESSEE STATE CONFERENCE OF THE NAACP, LEAGUE OF WOMEN VOTERS OF TENNESSEE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TRE HARGETT, in his official capacity as Secretary of State of Tennessee, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 3:26-cv-00638 <br> THREE-JUDGE COURT |

## DECLARATION OF ANDREW DODD

STATE OF TENNESSEE )
)
COUNTY OF DAVIDSON )

I, ANDREW DODD, having first been duly sworn according to law, makes oath upon my personal knowledge as follows:

1.      I am over the age of eighteen, and I am competent to testify on the matters set forth herein.

2.      I am an employee of the Division of Elections, Tennessee Department of State, and have been since 2011. I became an Assistant Coordinator of Elections in July 2023 and continue to serve in that role. I am also a licensed attorney and have been licensed in Tennessee since 2011.

3.      The State Coordinator of Elections is appointed by and serves at the pleasure of the Tennessee Secretary of State. The Coordinator of Elections serves as the chief administrative election officer of the State, and his statutory duties are set forth in Tenn. Code Ann. § 2-11-202. As Assistant Coordinator, I am charged with assisting the Coordinator with these statutory duties, which include, among other things, the following duties:

- Advise election commissions, primary boards, and administrators of elections as to the proper methods of performing their duties;
- Authoritatively interpret the election laws for all persons administering them;

1

- Furnish instructions for election officials as to their duties in the conduct of elections and copies of election laws manual and updating materials to the election commissions, primary boards, and administrators; and
- Provide materials for and conduct training programs for persons administering the election laws.

4.     On May 7, 2026, the Tennessee General Assembly adopted Public Chapter No. 3, which revised Tennessee's nine (9) U.S. House congressional districts. The primary election for these congressional districts is August 6, 2026. Because the deadline for candidates to qualify for this primary election had already passed, Public Chapter No. 2 "grandfathered" in candidates already qualified and provided a special qualifying period for additional candidates for U.S. House of Representatives to qualify. Specifically, Public Chapter No. 2 provided that already qualified candidates had three options:

- Run in the district that had the same district number that appeared on the candidate's original nominating petition;
- Run in a new district that had a different district number than what appeared on the nominating petition by filing a notarized statement with the Coordinator of Elections by noon on May 15; or
- Withdraw by filing a notarized statement with the Coordinator of Elections by noon on May 15.

Any existing qualified candidate who took no action would automatically remain qualified in the district listed on his or her original nominating petition.

5.     For additional candidates who desired to qualify, Public Chapter No. 2 provided a special qualifying period that began as of the effective date of the Act through noon on May 15. A person could qualify as a candidate for a congressional district by filing a nominating petition with the signatures of twenty-five voters registered in a county that is wholly or partially within that district within the special qualifying period.

6.     The political parties retained their ability to remove candidates who did not meet the bona fide requirements under their rules; however, the deadline to file any determination that a newly qualified candidate should be removed from the ballot with the Coordinator of Elections was noon on May 17. Candidates who were disqualified by a political party could not appeal the party's decision.

7.     The Division of Elections had acknowledged that the revised congressional districts and special qualifying period would make it more difficult for our staff and for the county election commissions to meet deadlines and prepare for the August 6 election. The State appropriated significant funds to meet those deadlines.

8.     While this is not the first time the Division has opined on meeting election deadlines, there are several significant factual differences between the present circumstances and possible election deadlines that were the subject of 2022 litigation regarding the Tennessee State Senate redistricting plan.

2

9.      First, the Act provided a May 15 qualifying deadline and no deadline for a candidate to withdraw thereafter; a May 17 noon deadline for parties to disqualify a candidate, and no appeal process—meaning that counties could potentially begin preparing their ballots and Division review could begin as soon as May 18. That is earlier than the timeline contemplated in the 2022 litigation.

10.     Second, the ballot for the August 2026 election is not nearly as large as the ballot was for the August 2022 election. The 2022 ballot included all five Supreme Court Judges (retention question); eleven Court of Appeals judges (retention question); ten Court of Criminal Appeal judges (retention question); all trial court judges, which may have involved contested races (circuit, chancery, criminal and probate); all District Attorneys General, which may have involved contested races, and all Public Defenders, which may have involved contested races. As most of these offices all have eight (8) year terms, they are not on the August 2026 ballot unless there is a vacancy.

11.     Third, the plan at issue today is different than the plan that was at issue in 2022. In 2022, the challenged State Senate Plan redistricted ninety-five (95) counties into thirty-three (33) Senatorial districts. The 2026 congressional plan redistricts the counties into nine (9) U.S. House congressional districts. And while the plan redistricts all ninety-five counties, under the new redistricting map, boundaries in fifty-two (52) counties remain unchanged, and in thirty-two (32) counties wholly in one district, the only change is a change in district numbers. In total, forty-three (43) counties are required to make updates to make changes to boundaries and/or district numbers.

12.     Additionally, the General Assembly is currently not in session, so there are no additional laws anticipated concerning election administration. While we are also assisting counties with the registration of individuals with a previous felony conviction, the Tennessee General Assembly enacted legislation in 2025 that significantly changed the process for a person with a felony conviction to have his or her voting rights restored. That process that relies heavily on a judicial process has reduced the time our office and the county election commissions must spend determining whether a person with a previous felony conviction is eligible to register to vote.

13.     Finally, perhaps the most significant difference between 2022 and the present situation is that when the General Assembly enacted Public Chapter No. 4, it appropriated significant funds ($3,154,700.00) to assist county election officials in meeting deadlines and performing their duties for the August election. This funding has allowed and will continue to allow election officials to:

- Pay for overtime and/or hire additional staff
- Pay vendors for services performed on an expedited basis
- Pay for mailing notices to voters, if any
- Pay for miscellaneous items such as additional training, signage, voter education, etc.

None of this funding was available in 2022, meaning that the counties would have had to fund all these items, which may have put the county in a position of needing to spend money that was not appropriated or running the risk of incomplete or inaccurate work.

3

14. The Division of Elections is committed to performing its statutory duties in preparing for the August election and assisting the county election commissions to appropriately prepare for that election. The performance of those duties has already begun. The Division of Elections has already sent a memo to the counties asking them to begin planning for the changes. Also, upon passage of the Act, the Division immediately sent a memo to the county election commissions outlining the steps they should take to implement the revised congressional districts. The Division also prepared and sent candidate qualifying information to the county election commissions. A copy of this memo is attached.

15. The Division also worked with the GIS staff in the Division of Property Assessments in the Comptroller's office. The GIS staff has mapping software that allows a voter to look up their address and determine which district they are in. The Division of Elections worked with GIS staff to ensure that it published the redistricted map on its website and that the "voter look-up" function is available. The map and a link to the "voter-look-up" function was also published on the Division's website on the same day the law was enacted.

16. The Division sent letters by overnight delivery on Thursday, May 7, via Federal Express to all fifty-three (53) candidates who had previously qualified, advising them of the revised congressional districts and their options. A copy of this letter is attached. Fifty-two (52) out of fifty-three (53) letters were delivered by Friday, May 8. The remaining letter (to Congressman Scott DesJarlais) was delivered Monday, May 11. Division staff also personally called all candidates to ensure that they were fully informed.

17. Division of Elections staff reviewed the residential address provided on each qualified candidate's nominating petition. Thirty-seven (37) out of fifty-three (53) candidates reside in the same district in which they originally qualified. Sixteen (16) candidates listed below now reside in a different district.

| Original District | Candidate | Party | Revised District |
|---|---|---|---|
| 4th | Victoria Broderick | Democratic | 9th |
| 5th | Charlie Hatcher | Republican | 9th |
| 5th | Mike Cortese | Democratic | 4th |
| 5th | Chaz Molder | Democratic | 9th |
| 5th | Joyce E. Neal | Democratic | 4th |
| 5th | Lowell Andre Reynolds | Independent | 7th |
| 6th | Natisha Brooks | Republican | 7th |
| 6th | Lore Bergman | Democratic | 7th |
| 6th | Andrew J. Koontz | Independent | 7th |
| 8th | Leonard Perkins | Democratic | 5th |
| 8th | Pamela Jeanine "P." Moses | Independent | 5th |
| 9th | Steve Cohen | Democratic | 5th |
| 9th | DeVante R. Hill | Democratic | 8th |
| 9th | Justin J. Pearson | Democratic | 5th |
| 9th | Wendell "Wells" Blankenship | Independent | 8th |
| 9th | Dennis Clark | Independent | 8th |

4

18. The deadline to file notarized statements to change districts or withdraw was noon on Friday, May 15. Of the fifty-three (53) candidates:

- Forty-five (45) candidates made no changes and will appear on the ballot in the redrawn district designated by the same district number;
- Seven (7) candidates timely submitted notarized statements of their intention to seek nomination or election in a different district; and
- One (1) candidate timely submitted a notarized statement to withdraw.

19. When Public Chapter No. 3 was signed on Thursday, May 7, county election commissions began taking the necessary steps required under the public chapter:

- By early Thursday evening, GIS staff from the Comptroller's Division of Property Assessments had provided lists to eleven (11) of twelve (12) counties split by congressional district boundaries totaling 831,241 affected addresses based on address points contained in 911 data on file with the office. (No data was needed for the twelfth county, Jefferson County, because its boundaries and district numbers did not change.)
- Counties have incurred costs related to redistricting. The voter registration vendor who services forty-one (41) of the forty-three (43) counties required to make changes has indicated it will charge a total of $27,500 for the assistance it has completed to date in reassigning voters. Counties have also reported incurring overtime and mailing costs.
- As of June 12, all forty-three (43) counties required to make updates have completed their initial reassignments and have reported updates to over 1.95 million voter records. The Comptroller's office has reviewed the changes in each of the eleven (11) counties where splits were updated and provided feedback on a limited number of addresses that need to be reviewed. Counties are finalizing their changes based on the feedback and will submit final lists to ensure no further changes are needed. Fifty-two (52) counties had no updates to make under this plan.
- Some county election commissions have started notifying voters of the updates by mail. Based on information from the counties, seven (7) counties have reported sending over 40,000 notices to date, and Davidson, Shelby, and Williamson Counties are finalizing countywide mailings to inform voters of updated districts.

20. During the special qualifying period, twenty-eight (28) additional candidates met the requirements to appear on the primary or general election ballot.

| District | Candidate | Party |
|---|---|---|
| 1st | Billy Cody | Independent |
| 3rd | Bryan Martin | Democratic |
| 4th | Joshua James | Republican |
| 4th | Cliff Huffman | Democratic |
| 4th | Tim Lanier | Democratic |
| 4th | Jacob Kristopher Anders | Independent |
| 4th | Clay Faircloth | Independent |
| 5th | Yolanda Cooper-Sutton | Democratic |

5

| District | Candidate | Party |
|---|---|---|
| 5th | Rachel Hurley | Democratic |
| 5th | Carrie Ann Iacomini | Democratic |
| 5th | James A. Johnson | Independent |
| 5th | Micheál (Me-Haul) O'Leary | Independent |
| 6th | Christopher Martin Finley | Democratic |
| 6th | Miriam Leibowitz | Democratic |
| 6th | Angus Purdy | Independent |
| 7th | Darden Copeland | Democratic |
| 7th | Vincent Dixie | Democratic |
| 7th | Saletta Holloway | Democratic |
| 8th | Jordan D. Hinders | Democratic |
| 8th | Heidi Kuhn | Democratic |
| 8th | Adam D. Austill | Independent |
| 8th | Antonio Futch | Independent |
| 8th | Henry J. Ward, II | Independent |
| 9th | Brent Taylor | Republican |
| 9th | Jeremy Thompson | Republican |
| 9th | Todd Warner | Republican |
| 9th | London Lamar | Democratic |
| 9th | Michelle Davis Head | Independent |

21. The Division provided the list of candidates to county election commissions shortly after noon on May 17. As of the morning of June 15, eighty-five (85) counties have submitted ballots for Division review. The Division has approved ballots for seventy-eight (78) counties. Of the forty-three (43) counties required to make updates, forty (40) have submitted ballots for Division approval, and the Division has approved thirty-five (35).

22. For an August election, each county must prepare a ballot for each primary and for each type of system they use, e.g., paper ballots for absentee voting, paper ballots for optical scan voting systems, and machine ballots for ballot marking devices or Direct Recording Electronic (DRE) voting systems with voter-verifiable paper audit trails (VVPAT) to be used on Election Day and early voting.

23. When the ballots come to the Division for approval, we have one employee who conducts the initial review of each ballot, and then each ballot is double-checked by other employees. T.C.A. § 2-5-207(e) specifically provides that no ballot shall be printed, or funds expended therefor by any county until such approval has been granted.

24. Seven (7) counties have already transmitted absentee by-mail ballots to voters, including three (3) counties that made updates. The deadline for all county election commissions to transmit ballots to military and overseas voters is one week away on Monday, June 22. That deadline is mandated by state and federal law.

25. At a minimum, any change to districts or candidates at this stage would require both absentee and in-person ballots to be re-created and re-approved for both the Republican and

6

Democratic primaries in Districts 3, 4, 5, 6, 7, 8, and 9, covering seventy-seven (77) counties. These tasks could not be completed in time to meet the June 22 deadline set in federal and state law for military and overseas voters.

26. Early voting begins Friday, July 17. County election commissions whose ballots have been approved have begun programming and testing voting equipment. Many counties rely on their vendors for in-person assistance in these tasks. Any change to districts or candidates at this stage would eliminate the progress counties have made in preparing their equipment and require additional expenses to reschedule and redo what has already been completed.

27. As detailed above, county election commissions have made extensive efforts to implement changes and are on schedule to meet all deadlines associated with the August election. Based upon my experience, any change at this stage would make compliance with the June 22 military and overseas ballot deadline impossible, and place readiness for the start of early voting on July 17 in serious jeopardy.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

ANDREW DODD

06/15/2026

Date

7



Mark Goins
Coordinator of Elections

615-741-7956
Mark.Goins@tnsos.gov

# MEMORANDUM

**To:** All County Election Commissions

**From:** Mark Goins *Mark Goins*
Coordinator of Elections

**Date:** May 4, 2026

**Subject:** Special Session Regarding Redistricting

**CC:** The Honorable Tre Hargett, Tennessee Secretary of State

As you may already be aware, the Tennessee General Assembly will be convening in special session on Tuesday, May 5, to consider changes to United States House districts. If enacted, these changes could have operational impacts on counties, including voter assignment, election programming, publication requirements, and candidate qualifying timelines.

This memorandum provides preliminary answers to frequently asked questions based on current law and known considerations. Additional guidance will be issued once legislation is filed and more specific information becomes available.

### What could be the impact of district changes?

Potential changes to congressional districts could impact voters across multiple counties. Because congressional districts are interrelated, a change to one district may necessitate changes to others. This has the potential to affect ballot styles, voter assignments, notices, and election administration across the state.

### What actions might counties need to take?

If district boundaries are altered, counties may be required to:

- Reprogram election management systems

  Counties with district changes will need to update election templates and ballot splits. In some cases, this could require rebuilding templates.

Case 3:26-cv-00638    Document 37-1    Filed 06/23/26    Page 9 of 16 PageID #: 537

- Address new county or precinct splits

  New district lines may split counties that are currently entirely within one congressional district.

- Update voter registration systems

  Counties will need to work with their voter registration vendor and the Comptroller's office to import new district maps, update street indexes, and process voter record changes.

- Retrain poll officials

  Counties that have not previously administered split districts will need additional training for poll officials to ensure voters receive the correct ballot style.

**How could precincts be affected?**

- A voting precinct may legally contain more than one congressional district.
- Some counties may choose to adjust precinct boundaries to reduce the number of split precincts.

Adjusting precinct boundaries may also trigger additional notice and publication requirements, including mailing notices to active voters whose polling places have changed.

**What publication requirements apply?**

State law requires public notice when certain election-related changes occur:

- District changes must be published in a newspaper of general circulation immediately after any alteration. (T.C.A. § 2-3-105).
- Notice of offices to be elected and qualifying deadlines must be published in a newspaper of general circulation. (T.C.A. § 2-12-111(a)).
- Polling place changes require mailed notice to each active voter affected. (T.C.A. § 2-3-105).

**Could publication requirements be modified?**

There is a possibility that certain publication requirements may be modified due to the compressed timeline.

**How will candidate qualifying be handled?**

Once legislation is filed, we will be able to provide more specific guidance. Due to the proximity of the election, the time period to issue and submit qualifying petitions will be compressed.

**What about candidates who have already qualified?**

Procedures concerning candidates who have already qualified will depend on the final legislation enacted. Guidance on this issue will be provided once legislation is filed and reviewed.

**What about funding?**

Costs associated with redistricting are typically county expenditures. We will be requesting that the legislation include reimbursement to counties for costs associated with any changes required.

Case 3:26-cv-00638   Document 37-1   Filed 06/23/26   Page 10 of 16 PageID #: 538

**Next Steps**

Please begin thinking about and planning for any next steps you may have to take to enact any changes. We are continuing to monitor developments closely and will share specific instructions as soon as they are available.

Please let us know how we can be of assistance as most of you are making final preparations for Election Day tomorrow. We are grateful for your continued efforts and dedication to the election process and ensuring Tennesseans can cast their vote with confidence.

Case 3:26-cv-00638    Document 37-1    Filed 06/23/26    Page 11 of 16 PageID #: 539



Elections Division
312 Rosa L. Parks Avenue, 7th Floor
Nashville, Tennessee 37243-1102

Mark Goins
Coordinator of Elections

615-741-7956
Mark.Goins@tnsos.gov

# MEMORANDUM

**To:**      All County Election Commissions

**From:**    Mark Goins *Mark Goins*
Coordinator of Elections

**Date:**    May 7, 2026

**Subject:** Implementation of Revised Congressional Districts

**CC:**      The Honorable Tre Hargett, Tennessee Secretary of State

---

The special session has concluded, and the Governor has signed legislation revising congressional district boundaries and related election processes. Please review the following information carefully and let us know if you have questions.

**Notices**

The law requires our office to provide notice of the revised districts and special qualifying process described later in this memo on our website. This information is now available at https://sos.tn.gov/announcements/2026-congressional-redistricting.

If you are in a county in which all or any portion of a redrawn congressional district is located, you must also publish notice on the county election commission's official website, if one exists. The most efficient way to do this is by linking to our website. Please make sure the link is prominent on your homepage. Even if a district did not change in your county, you should post the link in case voters in your district are looking for that information.

There has been significant news coverage regarding the new districts. Therefore, many of your voters will be aware of the changes. Under the legislation, you are not required to publish the new districts or notice of offices to be elected and deadlines in a newspaper of general circulation.

Case 3:26-cv-00638    Document 37-1    Filed 06/23/26    Page 12 of 16 PageID #: 540

**Candidate qualifying**

The legislation contains provisions for both existing candidates and for additional candidates. Existing candidates who qualified by the March 10 qualifying deadline are not required to file new petitions. These candidates will have three options:

1. Run in the district that has the same district number as previously qualified.
2. Run in a new district that has a different district number than what appeared on the petition by filing a notarized statement with the coordinator of elections by noon on May 15.
3. Withdraw by noon on May 15 by filing a notarized statement with the coordinator of elections.

Our office will notify the candidates of these options. Candidates may file notarized statements to change districts or withdraw in person, by mail, or by attaching the statement to an email. Existing candidates who take no action will remain qualified in the district listed on their original nominating petition.

The qualifying deadline is open in **all** nine congressional districts. New candidates must file during a special qualifying period that begins now and lasts until noon on Friday, May 15. Candidates can pick up petitions from our office or your office.

Please be prepared to issue petitions to congressional candidates. Because of the compressed qualifying period, we expect they are more likely to pick up from your office even though they file with us. When issuing congressional petitions, please remember:

- The blank at the top of the petition for county should be filled in as "N/A" since congressional districts are multi-county districts.
- Please make sure the correct district, party, and election date are listed on any petition issued. The election date for independent candidates is November 3.
- If you print the qualifying deadline on the petition, make sure it says noon on May 15.
- No candidates can withdraw after the qualifying deadline. If you print the withdrawal deadline on the petition, make sure it says noon on May 15.
- You should provide the summary outline to candidates, so they have all the information about when and where to file.

There are a couple of important updates to the petition process to be aware of. First, new candidates can collect signatures from any voter registered in a county that is wholly or partially within the new district. This provision will only apply to this election to assist in the transition to new districts. Please keep this in mind as you review signatures on any petition filed during the special qualifying period.

Second, candidates must file the original with the coordinator of elections. For candidates wanting to run in a primary, they still must file a certified duplicate with the party by the deadline.

The parties retain their ability to remove candidates who do not meet bona fide requirements under their rules. Any determination that a new candidate should be removed from the ballot must be filed

with the coordinator of elections by email by noon on May 17. Candidates who are disqualified by a party cannot appeal the party's decision.

We will certify the list of candidates to you as soon as practicable after the parties' deadline. Your county election commission must approve the ballot in a public meeting. If held at a time other than their regularly scheduled meeting, you will have to provide public notice. Costs incurred as a result of extra meetings required by these revisions are reimbursable. Remember that the agenda for your meetings must be posted for at least 48 hours before the meeting.

**Reassignment of voters**

To determine what updates will need to be made to your voter registration records, you will need to review the maps, information from the Comptroller's office, and the legislation to determine which district(s) your county now contains. Counties will fall into one of the following categories:

- For counties with no changes to district boundaries or numbering, no voter reassignment will be required.
- For counties that are entirely in one congressional district under the new boundaries, some have a new district number. In these counties, all voters will need to be reassigned to the new district number. Your voter registration vendor should be able to assist you in running a batch update to handle this quickly.
- For counties that now include multiple congressional districts and counties where splits have been revised, you will need to make sure voters are assigned to the correct district. Matthew Hill in the Comptroller's office has offered his assistance. If you have local GIS staff, they will be a resource as well. The process you follow to import maps or update your street index will depend on your voter registration system vendor. After assignments are made by your office, Matthew Hill will perform a comparison to ensure correct assignments.

If the boundaries have changed in your county, you will need to review the new district boundaries in relation to your existing precinct boundaries. A precinct is allowed to contain more than one congressional district. However, some counties may wish to adjust precinct boundaries in order to minimize precinct splits. If precinct boundaries are adjusted and voters are assigned to a new polling place, you must mail notice of the new polling place to every active voter affected.

Additionally, some counties may wish to mail notice to voters to inform them of their updated district number. While you are not required to mail notice solely based on a district number change, the legislature anticipated that some counties may wish to do so and provided funds sufficient to reimburse for these mailings.

**Update election management system**

You will also need to make updates to your voting systems to ensure the correct districts and candidates appear on the ballot. The existing election templates in your election management system are based on the district boundaries adopted in 2022. These templates will need to be updated or rebuilt to ensure the correct splits are assigned. You must proof and test the updates to ensure their accuracy.

Case 3:26-cv-00638    Document 37-1    Filed 06/23/26    Page 14 of 16 PageID #: 542

**Reimbursements**

The new law provided plenty of financial resources to reimburse counties for expenses incurred by the county election commission in implementing the new districts. Eligible expenses include, but are not limited to:

- Ample staffing costs to implement changes, including overtime or temporary workers
- Fees charged by vendors
- Mailing notices regarding new districts or polling place changes
- County election commission meetings to review revisions and ballots

Please keep up with any expenses related to these revisions. We will provide more detailed instructions about how to submit, but the process will be similar to submitting your expenses for primaries that are reimbursed.

Case 3:26-cv-00638    Document 37-1    Filed 06/23/26    Page 15 of 16 PageID #: 543

# Tennessee Secretary of State
## Tre Hargett



Elections Division
312 Rosa L. Parks Avenue, 7th Floor
Nashville, Tennessee 37243-1102

Mark Goins
Coordinator of Elections

615-741-7956
Mark.Goins@tnsos.gov

May 7, 2026

«Title» «Name_on_Ballot»
«Can_Street_Address»
«Can_City», TN «Can_Zip_Code»

RE:     Qualifying Procedure After Congressional Redistricting of 2026

Dear «Honorific» «Candidate_LName»:

As you may have heard, during a Special Legislative Session, the Tennessee General Assembly adopted new district lines for the U.S. House of Representatives (U.S. House). You can view the new legislative district lines at GoVoteTN.gov.

As a candidate who has already qualified for the U.S. House of Representatives, you are not required to submit a new nominating petition. You may choose one of the following options described below:

1. Run in the new district that has the same district number as the district number that appears on your nominating petition; or

2. Run in a new district that has a different district number than what appears on your nominating petition by filing a notarized statement with the Coordinator of Elections by noon on May 15; or

3. Withdraw by noon on May 15 by filing a notarized statement with the coordinator of elections.

You may file a notarized statement to change the district or withdraw in person, by mail, or by attaching the statement to Mark.Goins@tnsos.gov. For mailing and delivery purposes, you can find the office address on the letterhead of this letter. If you take no action, you will remain qualified in the district listed on your original nominating petition.

Thank you for your cooperation and participation in the election process.

Sincerely,

Mark Goins
Coordinator of Elections

sos.tn.gov