**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| TENNESSEE STATE CONFERENCE OF THE NAACP, *et al.* | § | |
| | § | |
| *Plaintiff,* | § | Case No. 3:26-cv-00638 |
| V. | § | |
| | § | |
| TRE HARGETT, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**TENNESSEE NAACP PLAINTIFFS' SUPPLEMENTAL BRIEF**
**ON THE IMPACT OF *SHERMAN V. HARGETT***

# TABLE OF CONTENTS

**Page**


INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 2

LEGAL STANDARD ............................................................................................. 3

ARGUMENT ........................................................................................................ 5

I. THIS COURT'S PRELIMINARY INJUNCTION DENIAL IN *SHERMAN V. HARGETT* BASED ON THOSE PLAINTIFFS' FAILURE TO ESTABLISH A LIKELIHOOD OF SUCCESS HAS NO BEARING ON THE PENDING MOTION TO DISMISS IN THIS CASE WITH ITS OWN DISTINCT RECORD AND CLAIMS ...................................... 5

A. The Standard Applied to the *Sherman* Plaintiffs' Preliminary Injunction Motion is Fundamentally Different from the Standard Applied at the Motion-to-Dismiss Stage....................................................................................................... 5

B. This Court's Preliminary Findings of Fact in *Sherman* Are Irrelevant to the Motion to Dismiss Inquiry Here Regarding the Sufficiency of Plaintiffs' Allegations....... 6

II. PLAINTIFFS' INTENTIONAL-DISCRIMINATION CLAIM DOES NOT REQUIRE PLEADING FACTS SUGGESTING THAT INTENTIONAL RACIAL DISCRIMINATION WAS THE GENERAL ASSEMBLY'S ONLY MOTIVE................. 7

A. TN NAACP Plaintiffs' First Amended Complaint Sufficiently Alleged that Race Was a Motivating Factor in the Enactment of the May 2026 Map. ........................ 8

B. Plaintiffs have Alleged Facts Showing that Race, Not Politics, Explains the Tennessee General Assembly 's Districting Decisions, Giving Rise to a Required Inference that an Alternative Map Could Be Offered at the Appropriate Stage of the Case. ..........................................................................................................11

CONCLUSION .................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. LULAC*,
146 S. Ct. 418 (2025) ........................................ 12

*Alexander v. S.C. State Conf. of the NAACP*,
602 U.S. 1 (2024) ........................................ 4, 11

*Allen v. Milligan*,
599 U.S. 1 (2023) ........................................ 7

*Arlington Heights v. Metropolitan Housing Development Corp.*,
429 U.S. 252 (1977) ........................................ 7, 10

*Bassett v. NCAA*,
528 F.3d 426 (6th Cir. 2008) ........................................ 12

*Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007) ........................................ 4

*Berk v. Choy*,
607 U.S. 187 (2026) ........................................ 4

*Cooper v. Harris*,
581 U.S. 285 (2017) ........................................ 11

*Directv, Inc. v. Treesh*,
487 F.3d 471 (6th Cir. 2007) ........................................ 1, 4, 7

*Foster v. Chatman*,
578 U.S. 488 (2016) ........................................ 7

*Fox v. Faison*,
668 F. Supp. 3d 751 (M.D. Tenn. 2023) ........................................ 4, 5, 7

*Hunter v. Underwood*,
471 U.S. 222 (1985) ........................................ 1, 8, 11

*Just City, Inc. v. Bonner*,
758 F. Supp. 3d 785 (W.D. Tenn. 2024) ........................................ 3

*Ketchum v. Byrne*,
740 F.2d 1398 (7th Cir. 1984) ........................................ 11

*Libertarian Party of Ohio v. Husted*,
751 F.3d 403 (6th Cir. 2014) ....................................................................................4

*Louisiana v. Callais*,
146 S. Ct. 1131 (2026)..............................................................................................3

*Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*,
672 F.3d 396 (6th Cir. 2012) ...............................................................................4, 12

*Miller v. Johnson*,
515 U.S. 900 (1995)................................................................................................11

*N. Carolina St. Conf. of NAACP v. McCrory*,
831 F.3d 204 (4th Cir. 2016) ..................................................................................11

*Rondigo, LLC v. Township of Richmond*,
641 F.3d 673 (6th Cir. 2011) ....................................................................................5

*Scheuer v. Rhodes*,
416 U.S. 232 (1974)..................................................................................................5

*Sec. & Exch. Comm'n v. Senex Corp.*,
534 F.2d 1240 (6th Cir. 1976) ..................................................................................6

*Sherman v. Hargett*,
No. 3:26-cv-00616 (M.D. Tenn. July 23, 2026) ............................................ *passim*

*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*,
119 F.3d 393 (6th Cir. 1997) ....................................................................................6

*Smith v. DeWine*,
476 F. Supp. 3d 635 (S.D. Ohio 2020) ......................................................................5

*Tangipa v. Newsom*,
816 F. Supp. 3d 1081 (C.D. Cal. 2026) ...................................................................12

*Tenn. Conf. of the NAACP v. Lee*,
105 F.4th 888 (2024)..................................................................................................3

*Tenn. NAACP v. Lee*,
746 F. Supp. 3d 473 (M.D. Tenn. 2024)..................................................................11

*Veasey v. Abbott*,
830 F.3d 216 (5th Cir. 2016) ..................................................................................11

*Wesley v. Campbell*,
779 F.3d 421 (6th Cir. 2015) ....................................................................................4

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 4

*Wysocki v. Int'l Bus. Mach. Corp.*,
607 F.3d 1102 (6th Cir. 2010) .......... 5

**Rules**

Fed. R. Civ. P. 12(d) .......... 6

Rule 12(b)(6) .......... 3, 4, 12

Rule 56 .......... 6

**Constitutional Provisions**

U.S. Constitution First Amendment .......... 1

U.S. Constitution Sixth Amendment .......... 5

U.S. Constitution Fourteenth Amendment .......... 1

## INTRODUCTION

The Court has requested that Tennessee NAACP Plaintiffs ("Plaintiffs") brief what, if any, effect the legal reasoning of the factually intensive preliminary injunction decision in *Sherman v. Hargett*, No. 3:26-cv-00616, has on the pending motion to dismiss here. The answer is simple: none. The *Sherman* Plaintiffs filed a lawsuit challenging Tennessee's enactment of a mid-decade congressional districting plan as contrary to the First and Fourteenth Amendments to the U.S. Constitution and sought preliminary injunctive relief. That motion, filed by different plaintiffs, offered different evidence and declarations by different expert witnesses than those at issue here. This Court ruled on the *Sherman* Plaintiffs' preliminary injunction motion based upon the burden of proof required for a preliminary injunction, a burden the *Sherman* Plaintiffs had to carry through the specific evidence and expert declarations they offered in that case. In *Sherman*, this Court found that "Plaintiffs won't succeed on their vote-dilution claim because they haven't presented meaningful evidence that race—not politics—motivated Tennessee's May 2026 map[.]" *Sherman v. Hargett*, No. 3:26-cv-00616, at *10 (M.D. Tenn. July 23, 2026). Those tentative evidentiary findings, and any associated legal conclusions or reasoning, were based on the preliminary injunction evidence offered by the *Sherman* plaintiffs.

The pending motion to dismiss here, by contrast, requires this Court to place the burden on Defendants and "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Here, Plaintiffs have brought a separate challenge contesting the constitutionality of the General Assembly's 2026 map, and have plausibly alleged that race was a motivating factor in the enactment of the map, allegations that are sufficient to entitle Plaintiffs to offer evidence to support that claim. *See Hunter v. Underwood*, 471 U.S. 222, 225 (1985). And even if plaintiffs were required to disentangle the role of race and politics in their

intentional discrimination claim, Plaintiffs' First Amended Complaint ("FAC") plausibly alleges that the Tennessee General Assembly's redistricting choices cannot be explained by politics but that race readily explains both the specific district configuration the legislature chose and its effect on Black voters. Even if evidence were required at the motion to dismiss stage, Plaintiffs here proffered alternative map evidence and expert analysis in support of their preliminary injunction that makes clear the role of race vis-à-vis alleged partisanship, *see* Dkt. 31-4, Dkt. 45-1, and are prepared to offer further evidence at trial. Because the *Sherman* Plaintiffs' preliminary injunction motion did not include such evidence and expert analysis, and because the lack of alternative map evidence was dispositive to this Court's analysis of the *Sherman* Plaintiffs' likelihood of success on the merits, No. 3:26-cv-00616, Dkt. 62 at 7, that decision should have no bearing on the pending motion to dismiss in this case.

## BACKGROUND

In 2020, the United States conducted the decennial census. In 2021, Tennessee redistricted congressional districts based on the 2020 census population figures, which include racial categories. First Amended Complaint ("FAC") ¶ 21. The 2020 census demonstrated that Shelby County has the highest Black population of any county in Tennessee, at nearly 55%, and Memphis, located in Shelby County, is the largest majority-Black city in the United States. FAC ¶ 4. It is with this knowledge that the Tennessee General Assembly dismantled the Ninth Congressional District ("CD 9") in 2026, a contiguous and compact geographic area that was the sole majority-Black district in Tennessee and included nearly all of Memphis and Shelby County. *Id*.

The May 2026 redistricting session was replete with abnormalities, including the very fact that it occurred despite a law that prohibits such mid-decade redistricting efforts. No court had ordered such redistricting and indeed white legislators acknowledged that the 2022 Congressional plan was "strong, fair, and legal." FAC ¶ 110. Instead, the only predicate was that the U.S. Supreme

Court weakened a key anti-discrimination law governing redistricting in *Louisiana v. Callais* on April 29. FAC ¶ 5; *see generally Louisiana v. Callais*, 146 S. Ct. 1131 (2026). Two days after the *Callais* decision, Governor Lee issued a Proclamation calling for a special legislative session. The special session began on May 5; within 48 hours, legislators concluded the session and CD 9 "cracked" into three districts. FAC ¶¶ 1, 18–19, 83, 137. Although Tennessee law banned mid-decade redistricting prior to the special session, the Tennessee General Assembly convened, introduced, and passed the 2026 map ("May 2026 map") and additional election-related legislation. *Id.* at 79–129.

Within days of the General Assembly's enactment of the May 2026 map, Plaintiffs filed this action and sought preliminary injunctive relief just over a week after the three-judge panel of this Court was constituted. Plaintiffs requested a ruling on their preliminary injunction with all due haste and specifically before the congressional primary election occurred using the discriminatory and unconstitutional May 2026 map. Although the parties fully briefed the preliminary injunction motion June 30, the State has sought to delay adjudication as long as possible, even requesting that there be no hearing until September. The State also filed its motion to dismiss on June 26, 2026 while Plaintiffs' motion remained pending. Dkt. 44. Plaintiffs' motion for a preliminary injunction and request for a hearing remain pending with the court.[1]

## <u>LEGAL STANDARD</u>

"[T]he standard for a plaintiff to survive a motion to dismiss is less demanding than for a plaintiff to show it is entitled to a preliminary injunction." *Just City, Inc. v. Bonner*, 758 F. Supp. 3d 785, 817–18 (W.D. Tenn. 2024) (citing *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 906–07 (2024)). In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the

[1] Plaintiffs continue to seek relief to address the State's current use of an unconstitutional map.

court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Fox v. Faison*, 668 F. Supp. 3d 751, 760 (M.D. Tenn. 2023) (quoting *Directv, Inc.*, 487 F.3d at 476); *Berk v. Choy*, 607 U.S. 187, 193 (2026) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015). The court must determine whether the claimant is entitled to offer evidence to support the claims, not whether the plaintiff can ultimately prove the facts alleged. *Fox*, 668 F. Supp. 3d at 760. Courts do not weigh evidence or resolve factual disputes when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012) (reversing dismissal where district court weighed competing factual assertions and found plaintiff's allegations to be "unpersuasive"). Nor does the "starting presumption" of legislative good faith alter the well-trodden rules for assessing a motion to dismiss. Indeed, the Supreme Court has applied the presumption only to well-developed factual records. *See, e.g.*, *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 11 (2024).

In contrast, when deciding a motion for preliminary injunction, the court must weigh: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). At the preliminary injunction stage, a plaintiff may not merely rely on unverified allegations in the complaint; rather, the movant must come forward with actual evidence to support or oppose the motion. *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014).

These two standards require district courts to undertake distinct analyses. *See Fox*, 668 F. Supp. 3d at 760–61 (discussing distinction between standards for motions to dismiss and motions

for preliminary injunctions). A plaintiff can fall short of satisfying the evidentiary standard required for preliminary injunctive relief while surviving a motion to dismiss. *See, e.g.*, *id.* at 768 (denying motion to dismiss Section 1983 claim while also finding plaintiff had not established a likelihood of success supporting preliminary relief on that claim); *Smith v. DeWine*, 476 F. Supp. 3d 635, 663–67 (S.D. Ohio 2020) (denying motion to dismiss claims for violation of 6th Amendment while also denying plaintiff's motion for preliminary injunction based on those claims).

## ARGUMENT

### I. THIS COURT'S PRELIMINARY INJUNCTION DENIAL IN *SHERMAN V. HARGETT* BASED ON THOSE PLAINTIFFS' FAILURE TO ESTABLISH A LIKELIHOOD OF SUCCESS HAS NO BEARING ON THE PENDING MOTION TO DISMISS IN THIS CASE WITH ITS OWN DISTINCT RECORD AND CLAIMS

#### A. The Standard Applied to the *Sherman* Plaintiffs' Preliminary Injunction Motion is Fundamentally Different from the Standard Applied at the Motion-to-Dismiss Stage

Unlike the standard this Court was required to employ to adjudicate the *Sherman* plaintiffs' preliminary injunction motion, here, the Court must place the burden on the State, not Plaintiffs. The Court's review of the sufficiency of the First Amended Complaint is limited to "whether the claimant is entitled to offer evidence to support the claims," rather than "whether a plaintiff will ultimately prevail" or if "recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Here, the First Amended Complaint contains factual allegations sufficient to entitle Plaintiffs to offer evidence to support their claim—and this is not altered by the *Sherman* preliminary injunction decision.

Furthermore, "[a]ssessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d

1102, 1104 (6th Cir. 2010)). "If a court does consider material outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion." *Id.*; *see also* Fed. R. Civ. P. 12(d).

### B. This Court's Preliminary Findings of Fact in *Sherman* Are Irrelevant to the Motion to Dismiss Inquiry Here Regarding the Sufficiency of Plaintiffs' Allegations

This Court's legal reasoning in *Sherman* does not affect the pending motion to dismiss in this case and whether Plaintiffs' well-pled allegations in their First Amended Complaint state a claim for relief. A preliminary injunction decision is "by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive," and is "subject to change after a full hearing and the opportunity for more mature deliberation." *Sec. & Exch. Comm'n v. Senex Corp*., 534 F.2d 1240, 1241 (6th Cir. 1976) (citation omitted). Thus, a district court's determination that a plaintiff had not offered sufficient evidence to support preliminary relief has no preclusive effect on the merits of that case, let alone that of other pending cases. *See Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997) ("findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits").

In *Sherman*, this Court found that "Plaintiffs won't succeed on their vote-dilution claim because they haven't presented meaningful evidence that race—not politics—motivated Tennessee's May 2026 map[.]" *Sherman*, No. 3:26-cv-00616, at *10 (M.D. Tenn. July 23, 2026). That finding was based on the preliminary evidence offered by the plaintiffs in that case and the evidentiary burden those plaintiffs were required to satisfy relative to their motion for a preliminary injunction. *See id.* at *5 (faulting *Sherman* plaintiffs for failing to assert "any direct evidence of racial motivation"); *id.* at *5–7 (faulting *Sherman* plaintiffs for failing to produce an

alternative map); *id*. at *8–9 (finding that the *Sherman* plaintiffs "haven't presented any evidence that could overcome our presumption of good faith"); *id*. at *9 & n.5 (finding that the *Sherman* plaintiffs' historical evidence and evidence of legislators' votes on unrelated legislation have a "tenuous link" to their argument on intent).

Those tentative evidentiary findings, and any associated legal conclusions or reasoning, were based on the preliminary injunction evidence offered by the *Sherman* plaintiffs. In contrast, the pending motion to dismiss in this case solely requires this Court to undertake the separate legal analysis as to sufficiency of Plaintiffs' First Amended Complaint, under which the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Fox*, 668 F. Supp. 3d at 760 (quoting *Directv, Inc.*, 487 F.3d at 476). The preliminary, case-specific conclusions in *Sherman* have no bearing on whether or not Plaintiffs have sufficiently pled their claim in this case. The conclusion that the *Sherman* plaintiffs failed to present adequate evidence to warrant a preliminary injunction does not mean that Plaintiffs here will fail to satisfy their burden in a trial of their claims.

## II. PLAINTIFFS' INTENTIONAL-DISCRIMINATION CLAIM DOES NOT REQUIRE PLEADING FACTS SUGGESTING THAT INTENTIONAL RACIAL DISCRIMINATION WAS THE GENERAL ASSEMBLY'S ONLY MOTIVE

The Court's application in *Sherman* of the legal rule that the claims asserted in that case required Plaintiffs to distinguish between racial and political motivations likewise has no effect on the pending motion to dismiss for two reasons. First, as Plaintiffs underscored in their opposition to the State's Motion to Dismiss, Dkt. 50 at 16, proving discriminatory intent "'does not require a plaintiff to prove that the challenged action rested *solely* on racially discriminatory purpose[ ].'" *Allen v. Milligan*, 599 U.S. 1, 37 (2023) (quoting *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977)) (emphasis in original). Rather, the Equal Protection Clause bars state action if race was a "motivating" factor. *See Foster v. Chatman*, 578 U.S. 488,

501 (2016) (quoting *Arlington Heights*, 429 U.S. at 266). In mixed-motive cases, plaintiffs will prevail if they prove that race was a motivating factor in the challenged action and need not rule out additional motivations, including politics. *See Hunter*, 471 U.S. at 225. Plaintiffs have done so here. Second, even if Plaintiffs in this case bore an obligation to do so, the Complaint plausibly alleges facts showing that Tennessee General Assembly 's redistricting choices cannot be explained by politics but that race readily explains the unusual timing of the Tennessee General Assembly 's actions, the specific district configuration the legislature chose, the motivation driving that choice, and the resulting discriminatory effect on Black voters.

### A. TN NAACP Plaintiffs' First Amended Complaint Sufficiently Alleged that Race Was a Motivating Factor in the Enactment of the May 2026 Map.

Plaintiffs sufficiently alleged that race was a motivating factor in the General Assembly's decision to engage in mid-decade redistricting and crack majority-Black U.S. Congressional District 9 into three separate districts, "parcel[ing] out segments of the geographically compact city of Memphis to new districts that snake hundreds of miles across the state into rural counties in Middle and West Tennessee." FAC ¶ 10. Specifically, Plaintiffs alleged that:

- The General Assembly departed from longstanding legislative procedures and amended Tennessee law governing redistricting to undertake a nearly unprecedented mid-decade redistricting effort to target Black voting power. FAC ¶¶ 17, 79-84, 105, 134–36,139;
- Tennessee's mid-decade redistricting was in direct response to the Supreme Court's weakening of federal law prohibiting racial discrimination in redistricting. FAC ¶¶ 75, 76;

- A racially identifiable majority of the General Assembly took unprecedented steps to bar public participation and stifle debate to pass the May 2026 map in just over 48 hours. FAC ¶¶ 16, 18, 85 (Ad Hoc Rules Committee controlled by white legislators "rejected proposals to allow for public hearings on redistricting legislation and to require legal analysis for compliance with the statutes and laws of Tennessee and the United States" and shortened time for the public to view May 2026 map), 86–87 (adopting new rules to "punish protest or dissent, barring anyone who 'disrupts' meetings for the entire Extraordinary Session"), 88, 107, 131;
- The redrawing of Tennessee's congressional districting plan eschewed traditional districting criteria in pursuit of the cracking of the Black population in Shelby County and Memphis. FAC ¶¶ 13, 93, 140–44, 144–49;
- Key legislators in the General Assembly were aware that the changes proposed in the May 2026 map "would deny the votes of, and adversely impact, Black voters." FAC ¶ 11;
- Claims that Legislators were motivated by "partisan advantage" defied credulity and indeed, were often pretextual; FAC ¶¶ 12, 156–57;
- Legislative leaders and the sponsors of the May 2026 map claimed to have used only Census data—*which includes racial but not partisan information*—to draw it. FAC ¶¶ 96, 111, 113–15, 124, 158 (Sen. Zachary, sponsor of 2026 Map, claiming Census data was only data used to draw 2026 Map), 159–60;
- The Chairman of the House Congressional Redistricting Committee, Representative Lowell Russell, invoked racial stereotypes and racial dog whistles

when he stated that cracking Memphis across three congressional districts would make Memphis "safer" and that his friend in the Memphis Police Department shared that sentiment. FAC ¶ 97;

- The changes wrought by the General Assembly's cracking of Shelby County and the city of Memphis into three pieces would deny Black voters the opportunity to elect their candidates of choice as they have done in previous elections. FAC ¶¶ 145, 150–55;
- The Tennessee General Assembly reopened candidate qualifying to allow candidates who had not previously qualified the opportunity to run in the redrawn districts, which ensured that a white Republican could run against the former presumptive Republican nominee, Charlotte Bermann, who is Black, in one of the redrawn districts. FAC ¶ 15;
- No Black legislator voted in favor of the May 2026 map. FAC ¶¶ 120, 125–26, 128; and
- Recent incidents of discrimination against Black legislators, the targeting of policies responsive to the needs of Black Tennesseans, and the overriding of self-governance in Memphis and Shelby County further evince discriminatory intent by the General Assembly in enacting the May 2026 map. FAC ¶¶ 166–75.

These allegations suffice to raise an inference that intentional discrimination was a motivating factor in the General Assembly's decision to crack the Black population in Shelby County and the city of Memphis equally into three districts to ensure Black Memphians do not "get a seat at the table." FAC ¶ 165; *Arlington Heights*, 429 U.S. at 266. That alone is sufficient to defeat Defendants' motion to dismiss. But Plaintiffs' well-pled allegations that the General

Assembly relied solely on Census data, data that contain racial but not partisan information, to achieve a 9-0 Republican map on its own demonstrates its unconstitutionality. *See Alexander*, 602 U.S. at n.1; *Miller v. Johnson*, 515 U.S. 900, 914 (1995); *see also Cooper v. Harris*, 581 U.S. 285, 291, n. 1 (2017).

That the complaint includes allegations recognizing that the General Assembly was acting in part to pursue partisan advantage does not negate or expunge Plaintiffs' allegations of racially discriminatory purpose. *See, e.g.*, *Cooper*, 581 U.S. at 318; *Hunter*, 471 U.S. at 228–29. "Intentions to achieve partisan gain and to racially discriminate are not mutually exclusive." *Veasey v. Abbott*, 830 F.3d 216, 241 n.30 (5th Cir. 2016); *N. Carolina St. Conf. of NAACP v. McCrory*, 831 F.3d 204, 222 (4th Cir. 2016) ("[I]ntentionally targeting a particular race's access to the franchise because its members vote for a particular party, in a predictable manner, constitutes discriminatory purpose."); *Ketchum v. Byrne*, 740 F.2d 1398, 1408 (7th Cir. 1984) (noting that "racial discrimination [may be and has been a] necessary accompaniment of [an] action taken to protect incumbencies"). Because Plaintiffs have plausibly alleged that the Tennessee General Assembly intended to discriminate against Black voters in the enactment of May 2026 map and that partisan objectives were achieved by using race as a proxy for partisanship, Plaintiffs have more than met their burden at the motion to dismiss stage. *Tenn. NAACP v. Lee*, 746 F. Supp. 3d 473, 501 (M.D. Tenn. 2024) (counsel for Tennessee conceded at motion to dismiss stage "that the intentional drawing of a single-member district's lines to harm racial minorities would likely show that the legislature predominately used race during the redistricting").

B. <u>Plaintiffs have Alleged Facts Showing that Race, Not Politics, Explains the Tennessee General Assembly 's Districting Decisions, Giving Rise to a Required Inference that an Alternative Map Could Be Offered at the Appropriate Stage of the Case.</u>

This Court in *Sherman* denied plaintiffs' preliminary injunction motion in large part because they did not offer an alternative map. *Sherman*, No. 3:26-cv-00616, Dkt. 62 at *6 (July 23, 2026). That ruling has no bearing here. At the motion to dismiss stage, Plaintiffs are not yet required to proffer evidence to prove their claims, including, in the appropriate case, evidence in the form of an alternative map. Although Plaintiffs can—and, in support of their preliminary injunction, have—offered alternative maps that disentangle race and partisanship, *see* Dkt. 31-4, Dkt. 45-1, surviving a motion to dismiss under Rule 12(b)(6) requires only factual allegations that plausibly support relief. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). It does not require evidence, expert analysis, or an alternative map. *See, e.g.*, *Mediacom Southeast*, 672 F.3d at 401. Even in cases alleging racial gerrymandering, where alternative maps are often required, courts have considered such evidence when evaluating a request for preliminary injunctive relief or at trial on the merits, not in assessing whether the complaint states a plausible claim for relief. *See, e.g.*, *Abbott v. LULAC*, 146 S. Ct. 418, 419 (2025) (considering absence of alternative map when granting stay of preliminary injunction); *Tangipa v. Newsom*, 816 F. Supp. 3d 1081, 1121, 1131–33 (C.D. Cal. 2026) (considering alternative-map evidence in ruling on preliminary injunction).

The relevant question then is not whether Plaintiffs have already proven that Defendants could have achieved their stated objectives through an alternative map; it is whether the allegations in the First Amended Complaint plausibly allege that race was a motivating factor in the General Assembly's enactment of the May 2026 map. *See supra* II.A. At the pleading stage, such allegations are enough to require the court to infer that this motivation could be demonstrated through the production of an alternative map at the appropriate point in the litigation. Here, Plaintiffs alleged that Defendants' partisanship claims were in many instances pretextual, that they abandoned traditional districting principles, fractured a longstanding majority-Black district, split

Memphis and Shelby County into three districts that nearly evenly divided Black communities to deny them the opportunity to elect candidates of choice even in primary elections, and relied exclusively on Census data, which contains only racial demographic but not partisan information, to achieve a 9-0 Republican map. *See* FAC ¶¶ 10, 12–13, 141, 146, 156–57, 159, 194, 200. Taken as true, these allegations more than support a reasonable inference that race motivated the drawing of the 2026 Map. Plaintiffs must now be permitted to prove that Defendants' partisan justifications were overstated and pretextual to camouflage, implement, or supplement racial motivations, including through the production of an alternative map should the Court determine that such evidence is required (which, as noted, it should not).

Even were the Court inclined to look beyond the allegations of the complaint in this case, it is indeed possible to provide an alternative map. Plaintiffs have already done so. *See* Dkt. 31-4, Dkt. 45-1. In support of their motion for preliminary injunction, Plaintiffs proffered expert testimony from Dr. Moon Duchin who used an ensemble or simulation analysis to evaluate the role that race played in the design of the May 2026 map and test the plausibility of legislators' claims that they drew the challenged map to achieve partisan goals without considering race. Dr. Duchin found that maps separately targeting race and partisan interests produced congressional districting plans closely approximating the partisan advantage of the May 2026 map. But only the race-targeted maps replicated the racial demographics of the 2026 Plan. Maps designed to target partisan advantage did not produce the even tripartite split of the Black voting population between congressional districts in the Southwest corner of the state like the May 2026 plan. Thus, although alternative-map evidence is not required to survive a motion to dismiss, Plaintiffs are ready and able to proffer such evidence in the event it becomes relevant at a later stage in this litigation. Because the *Sherman* Plaintiffs' preliminary injunction motion did not include such evidence, this

Court's analysis of the alternative-map requirement in *Sherman*, No. 3:26-cv-00616, Dkt. 62 at *7, should not inform its consideration of the motion to dismiss in this case.

## CONCLUSION

Put simply, the legal reasoning of the decision to deny the plaintiffs' motion for preliminary injunction in *Sherman v. Hargett* has no effect on the Motion to Dismiss currently pending in this case against different Plaintiffs. The procedural standards and burdens are different and the decision in that case was based upon the evidence specifically offered or not offered in that case. It is black letter law that, at this stage, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."

Dated: August 24, 2026

Respectfully submitted,

**TURNER FEILD, PLLC**
/s/*VAN D. TURNER, JR.*
Van D. Turner, Jr. (TN Bar No. 022603)
2650 Thousand Oaks Boulevard, Suite 2325
Memphis, TN 38118
(901) 290-6610
vturner@turnerfeildlaw.com

**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**
Kristen Clarke*
Anthony P. Ashton*
4805 Mt. Hope Drive
Baltimore, MD 20215
(410) 580-5777
legal@naacpnet.org

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
Robert Weiner **
Jennifer Nwachukwu*
Olivia Sedwick*
1500 K Street NW, Suite 900
Washington, DC 20005
(202) 662-8600
rweiner@lawyerscommittee.org
jnwachukwu@lawyerscommittee.org
osedwick@lawyerscommittee.org

**NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.**
Kathryn Sadavasian*
Colin Burke**
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
ksadavasian@naacpldf.org
cburke@naacpldf.org

**BRYAN CAVE LEIGHTON PAISNER LLP**
Meryl Macklin**
Jon Fetterly**
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
(415) 675-3433
meryl.macklin@bclplaw.com
jon.fetterly@bclplaw.com

*Admitted *pro hac vice*
** *Pro hac vice* motion pending

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on August 24, 2026, a true and correct copy of the foregoing has been served on counsel for the Defendant or Defendants themselves via the Court's CM/ECF system:

ZACHARY BARKER
zachary.barker@ag.tn.gov

CODY BRANDON
cody.brandon@ag.tn.gov

TAYLOR MEEHAN
taylor@consovoymccarthy.com

**TURNER FEILD, PLLC**

/s/*VAN D. TURNER, JR.*
Van D. Turner, Jr. (TN Bar No. 022603)
2650 Thousand Oaks Boulevard, Suite 2325
Memphis, TN 38118
(901) 290-6610
vturner@turnerfeildlaw.com